**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**Norwell Freeland, Jr.,**

        **Plaintiff,**

   **v.**

**Fidelity National Property and
Casualty Insurance Company,**
*et al.***,**

        **Defendants.**

**Case No. 2:08-cv-1000
Judge Smith
Magistrate Judge Kemp**

**OPINION AND ORDER**

    Plaintiff Norwell Freeland, Jr., brings this action against Fidelity National Property and Casualty Insurance Company ("Fidelity") and England Insurance Agency, Inc. ("England"). Plaintiff's claims in this action arise from the issuance of flood insurance to him by Defendant Fidelity. The matter is before the Court on Defendants' Motions for Summary Judgment (Docs. 67 and 69). These motions have been fully briefed and are ripe for disposition. For the reasons that follow, the Court **GRANTS** Defendants' motions.

**I.**    **Background**

    In June 2002, Plaintiff sought to obtain flood insurance for his property located at 3511 Sellers Drive, Millersport, Ohio ("the property"). Plaintiff had obtained a loan secured by the property, and the lender required Plaintiff to obtain flood insurance on the property. As a result, Plaintiff contacted Defendant England to help him obtain this insurance. Defendant England's owner David England allegedly represented to Plaintiff that the yearly premium for $250,000 of

flood insurance for the property would cost approximately $400. Defendant England completed an application for insurance and submitted the application to Defendant Fidelity on Plaintiff's behalf. An "elevation certificate," completed by a licensed surveyor, was also submitted at Defendant Fidelity's request. Later, Plaintiff was informed that the yearly premium for the insurance would cost more than $3,000. Plaintiff was unhappy with the premium amount and questioned the amount with Defendants England and Fidelity. Defendant Fidelity refused to change the amount of the premium. Plaintiff ultimately paid a portion of the required premium to Defendant Fidelity and correspondingly received flood insurance coverage in the amount of $195,900. The policy has been renewed each year since its original issuance in 2002.

In September 2008, Plaintiff initiated this lawsuit in the Fairfield County Court of Common Pleas. The next month, Defendant Fidelity removed the case to this Court. In this action, Plaintiff presents three causes of action against Defendants: breach of contract, fraudulent misrepresentation, and an alleged violation of Ohio's Valentine Act. The parties conducted discovery, and in April 2010, Defendants separately moved for summary judgment on all three claims asserted by Plaintiff (Doc. 67 and 69). Defendant Fidelity also moved to quash Plaintiff's jury demand (Doc. 68). Lastly, Plaintiff filed an unopposed motion to supplement his memorandum in opposition to Defendant Fidelity's motion for summary judgment (Doc. 84). These motions are ripe for disposition.

## II.     Summary Judgment Standard

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(c)(2), which provides as follows: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The Court therefore may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto ., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 251-53).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992).  Furthermore, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994).

Therefore, summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Id.*, 477 U.S. at 247-48.  *See generally Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989).  Thus, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's

3

denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.' " *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  That is, it is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita*, 475 U.S. at 586).  Moreover, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).  Consequently, the trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *J.C. Bradford & Co.*, at 1479-80.

It is with these principles in mind that the Court addresses Defendants' motions for summary judgment.

### III. Discussion

Before analyzing Plaintiff's claims, the Court will briefly outline the context in which Plaintiff's flood insurance policy was issued.  The National Flood Insurance Act of 1968 ("NFIA"), as amended, 42 U.S.C. § 4001 et seq., created the National Flood Insurance Program ("NFIP") and was enacted to provide a unified national program to reduce and avoid losses due to flood by making reasonably priced flood insurance available for residential and commercial properties.  *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002).  The Federal Emergency Management Administration ("FEMA") administers the NFIP.  42 U.S.C. § 4081(a). Congress authorized FEMA to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or

loss of property which is covered by flood insurance." 42 U.S.C. § 4019. Accordingly, FEMA established a comprehensive regulatory scheme setting forth the rights and responsibilities of insureds and insurers under the NFIP. *Gibson*, 289 F.3d at 946 (citing 44 C.F.R. Pts. 61-78 (2000)). Additionally, FEMA created the "Write Your Own" (WYO) program, which authorizes private insurance companies to issue standard flood insurance policies ("SFIPs"). *Id.* While WYO companies write and service SFIPs in their own name (and receive an expense allowance for policies written and claims processed), the federal government retains responsibility for underwriting losses. *Norman v. Fidelity Nat. Ins. Co.*, 354 F. App'x 934, 935 n.1. After administrative expenses are deducted, SFIP premiums collected by WYO companies are remitted to FEMA. *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 599 (4th Cir. 2002). Defendant Fidelity is one of the many insurance company carriers that participate in the WYO program, and it issued the standard flood insurance policy to Plaintiff in August 2002 pursuant to this program.

    A.    Breach of Contract

Plaintiff asserts a claim of breach of contract against both defendants. To prevail on a breach of contract claim, a plaintiff must demonstrate the following elements: (1) that a valid contract existed; (2) the plaintiff fulfilled its contractual obligations; (3) the defendant failed to fulfill its obligations; and (4) damages resulted from this failure. *See, e.g., Powell v. Grant Med. Ctr.*, 771 N.E.2d 874, 881 (Ohio App. Ct. 2002). "A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing." *Lawler v. Burt*, 7 Ohio St. 340, 350 (1857). In order to declare the existence of a contract, the parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of*

5

*Indus. Relations*, 575 N.E.2d 134, 136-37 (Ohio 1991). More specifically, the elements necessary to establish a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual asset and legality of object and of consideration. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance. Restatement (Second) of Contracts § 18 (1981).

Plaintiff alleges that he contracted with Defendant England "to obtain flood insurance at the quoted premium from an insurance writer of flood insurance policies," and that Defendant England breached this agreement. (Doc. 79, p. 4). That is, Plaintiff alleges that Defendant England agreed to obtain $250,000 in flood insurance coverage for the property at a yearly premium of approximately $400, and that it failed to acquire the coverage for him. According to Plaintiff, Defendant England's failure to procure insurance with these characteristics constituted a breach of the contract and has resulted in damages to him.

Plaintiff's breach of contract claim against Defendant England is legally deficient. The record contains no evidence from which a reasonable jury could conclude that Defendant England contracted with Plaintiff to obtain flood insurance with $250,000 in coverage and a yearly premium rate of $400. Evidence in the record indicates that Defendant England agreed to assist Plaintiff in obtaining flood insurance, and that he predicted that the yearly premium for $250,000 in flood insurance coverage for the property would be approximately $400. While a reasonable jury could conclude that Defendant England agreed to assist Plaintiff in procuring flood insurance, it reasonably could not conclude that Defendant England agreed to procure that amount of insurance coverage at a particular set rate. The Court notes that Plaintiff also suggests that

6

Defendant England incorrectly completed the flood insurance application, resulting in an incorrect premium calculation by Defendant Fidelity, and that Plaintiff did not review the application before its submission.  While Plaintiff asserts that he did not sign the flood insurance application before its submission, and that Defendant England incorrectly completed the application, Plaintiff has not alleged a negligence claim against Defendant England.  Furthermore, Plaintiff has submitted, to the Court, a copy of the flood insurance application bearing his signature.  Although it is unclear whether this application was signed before or after it was submitted to Defendant Fidelity, the fact remains that Plaintiff verified the information on the application by signing it, and he cannot now argue that he never approved this information.

As to Defendant Fidelity, Plaintiff alleges that this defendant also breached an agreement to provide $250,000 in flood insurance coverage for a yearly premium of approximately $400. This claim fails for the simple reason that no evidence in the record indicates that Defendant Fidelity agreed to insure Plaintiff's property in the requested coverage amount for a yearly premium of $400.

Additionally, Plaintiff alleges that Defendant Fidelity breached its contract with Plaintiff as it relates to the SFIP because it did not comply with guidelines established by FEMA in calculating the premium rate and because it did not inquire into apparent inaccuracies in the information submitted as to Plaintiff's application for flood insurance.  For example, Plaintiff asserts that Defendant Fidelity should have requested photographs of the property in connection with the application.  As a corollary to Plaintiff's argument that Defendant England incorrectly completed the flood insurance application submitted on his behalf, Plaintiff asserts that Defendant Fidelity should have recognized a discrepancy between the flood insurance application and the

elevation certificate, and consequently should have taken action to resolve any inconsistency. Stated differently, Plaintiff argues that Defendant Fidelity knew or should have known that either the flood insurance application or the elevation certificate was incorrect, and based on this knowledge, should have inquired further.

Plaintiff's argument is unpersuasive. Plaintiff is essentially arguing that Defendant Fidelity should be liable for not correcting or inquiring into any apparent inconsistency or inaccuracy contained in the information submitted on behalf of Plaintiff as it relates to his request, or application, for flood insurance coverage. However, Plaintiff fails to cite any authority supporting the proposition that a WYO company must independently verify the information submitted to it by an applicant. An insurance application is a potential insured's opportunity to propose a contract of insurance based on the information provided to the insurer. In this context, the burden is on the applicant to ensure the accuracy of the information provided to the potential insurer of the risk, as the insurer relies on this information to determine the precise nature of the risk involved in calculating the premium rate. Defendant Fidelity reviewed the information provided, and based on that information, calculated the premium. This calculation was approved by FEMA, which sets the guidelines for WYO companies for calculating premiums in this context. Furthermore, both Defendant Fidelity and Plaintiff have produced a copy of the flood insurance application dated June 24, 2002, that bears Plaintiff's signature. Plaintiff does not argue that the signature is not his. By signing the application, Plaintiff verified the information contained therein.

Plaintiff's argument that Defendant Fidelity should have requested photographs is also unpersuasive. In support of this argument, Plaintiff has submitted a blank elevation certificate form, dated March 2009, that directs the person completing the form to include two photographs

8

of the building if the certificate is being used to obtain insurance. However, the elevation certificate form completed in 2002 does not require the attachment of photographs in all circumstances. The form that was completed instructs the surveyor to attach a sketch or photograph of the building, if none of the provided building diagram examples accurately represents the building. The surveyor identified diagram 7 as accurately representing the building and therefore did not attach a sketch or photograph of the building on the property.

Plaintiff repeatedly asserts that an issue of fact exists as to whether Defendant Fidelity has incorrectly calculated the appropriate premium for $250,000 in flood insurance coverage for his property. In support, Plaintiff identifies apparent discrepancies in the application that was submitted to Defendant Fidelity. Plaintiff seems to reason that the existence of these discrepancies indicates that the premium was miscalculated. But this reasoning assumes that Defendant Fidelity miscalculated the premium based on the information before it. And Plaintiff has not presented competent evidence indicating that the premium should have been lower based on the actual characteristics of the property. In this regard, Plaintiff might argue he has presented evidence that his premium is too high because he has presented evidence that his neighbors' rates for flood insurance coverage are significantly less. But, because each property has its own characteristics relating to the setting of a flood insurance premium, the application of the rate setting guidelines to other properties is not relevant here. Therefore, evidence of the rates paid by his neighbors is not probative of whether Defendant Fidelity properly calculated the premium rate based on the information provided.

Moreover, it is important to note that, while Plaintiff argues that the premium was miscalculated, the calculation of the premium was reviewed and approved by FEMA. In response

to this undisputed fact, Plaintiff states that the information it had was not correct, and he blames Defendant England for any inaccuracy and Defendant Fidelity for not inquiring into the accuracy of the information. This response fails to consider that Plaintiff authorized Defendant England to submit the application, that, at some point in time, Plaintiff signed the application indicating his verification and approval of the statements contained therein, that a licensed engineer retained by Plaintiff completed the elevation certificate, and, finally, that Plaintiff has presented no evidence indicating that the premium was miscalculated and should have been lower based on the unique characteristics of the property and the application of the rating structure, established by FEMA, to the property.

Accordingly, the Court finds that no genuine issue of material fact exists as to Plaintiff's claim of breach of contract and Defendants are entitled to judgment as a matter of law as to this claim.

B.    Fraudulent Misrepresentation

Plaintiff brings a fraudulent misrepresentation claim against both defendants. The elements of common law fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1083 (Ohio 1991). The elements of the claim are conjunctive, and therefore all of them must be shown. *Graham v. American Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003) (citing *Schwartz v. Capital Sav. &*

*Loan Co.*, 381 N.E.2d 957, 959 (1978)).

A representation is material if it is essential to contract formation; in other words, if the contract would not be formed but for the representation, then the representation is material. *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp.2d 722, 741 (S.D. Ohio 2009) (Graham, J.) (citing *Burke Lakefront Services v. Lemieux*, No. 79665 (8th Dist. unreported), 2002 WL 1821962, *5 (Ohio Ct. App. Aug. 8, 2002). But the alleged misrepresentation must involve a past or present fact. *Id.* " 'Generally, fraud is not predicated on a representation concerning a future event, as such representation is more in the nature of a promise or contract or constitutes mere predictions or opinions about what the future may bring.' " *Id.* (quoting *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 778 N.E.2d 80, 89 (2002)). "However, a promise made with a present intention not to perform is a misrepresentation of an existing fact even if the promised performance is to occur in the future." *Yo-Can, Inc.*, 778 N.E.2d at 89; *see Tibbs v. Nat'l Homes Constr. Corp.*, 369 N.E.2d 1218, 1223 (1977) ("the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent").

Plaintiff alleges that Defendant England misrepresented the premium associated with $250,000 in flood insurance coverage to be approximately $400 per year. According to Plaintiff, Defendant England led him "to believe that his quote for the $400.00 premium was a firm quote, which would be locked in once the application was approved." (Pl.'s Mem. Contra Def. England's Mot. for Summ. J., p. 8). Plaintiff argues that Defendant England was under a duty to disclose that the $400 premium was not a firm quote. Plaintiff asserts that he relied on the expertise of Defendant England and that this reliance was detrimental to him because he later paid more for the insurance than was originally quoted. Defendant England argues that Plaintiff's

11

fraudulent misrepresentation claim fails because his claim alleges a misrepresentation as to a promise, prediction, or opinion about a future event or circumstance. Defendant England also argues that this claim fails because Plaintiff cannot substantiate, with evidence, materiality or the detrimental reliance necessary to maintain the claim.

Plaintiff is correct that the price of insurance is an important factor in the acquisition of insurance. But the Court finds Plaintiff's argument, that evidence reasonably demonstrates that his reliance on Defendant England's alleged assertion harmed him, to be unpersuasive. Construing the evidence most favorably toward Plaintiff, Defendant England indicated to him that the yearly cost of $250,000 in flood insurance coverage would be approximately $400. Undisputed evidence additionally demonstrates that Plaintiff subsequently learned that the premium would be much more costly, and he paid the higher amount (or at least a significant portion of it). That is, it is undisputed that Plaintiff purchased the insurance coverage from Defendant Fidelity, after learning that the amount of the yearly premium would be significantly more than originally predicted by Defendant England. Furthermore, Plaintiff has continued to renew the policy and pay the premium to Defendant Fidelity every year since the initial policy was issued in 2002.

In response to Defendant England's argument that Plaintiff's payment of the premium precludes his fraud claim, Plaintiff reasons that he had no choice as to whether to purchase the insurance at that point because the lender required the insurance, and because "the damage had already been done to his ability to shop for flood insurance." (Pl.'s Mem. Contra Def. England's Mot. for Summ. J., p. 8). Thus, Plaintiff suggests in his briefing that he was precluded from purchasing flood insurance with the assistance of a different agent, or from an alternate insurer.

12

This allegation of detrimental reliance is not supported by evidence in the record.  While evidence does support the assertion that the lender required Plaintiff to purchase the flood insurance, no evidence indicates that Plaintiff was required to purchase the insurance with Defendant England's assistance or that he was prohibited from obtaining the insurance from a different insurer.  Plaintiff is upset that Defendant England's predictive statement, regarding the amount Defendant Fidelity would charge for the flood insurance, turned out to be wrong.  But Plaintiff's dissatisfaction does not create a viable cause of action against Defendant England.

As to his fraud claim against Defendant Fidelity, Plaintiff states that, while his fraud claim against Defendant England is based on its representation that the yearly premium would be $400, "Fidelity's misrepresentations are more complicated."  (Pl.'s Mem. in Opp. Def. Fidelity's Mot. for Summ. J., p. 8).  While Plaintiff characterizes Defendant Fidelity's fraud as complicated, it appears that Plaintiff alleges that Defendant Fidelity committed fraud by incorrectly determining the yearly premium rate for the insurance coverage, and then, despite notice of the incorrectness of the rate, continuing to charge this amount.  Plaintiff states that "Fidelity continued to maintain an inflated premium rate, totally disregarding indications that it was not correct, and refusing to take steps to determine the correct rate.  Its actions demonstrate a complete disregard for Plaintiff and his need to obtain flood insurance.  Basically, Fidelity knew it had Plaintiff between a rock and a hard place."  *Id.*  Plaintiff again asserts that Defendant Fidelity had a duty to seek information beyond what was submitted, but he cites no authority for this assertion and even suggests that the scope of the duty should be determined by a jury.  (*See* Pl.'s Mem. Contra Def. Fidelity's Mot. For Summ. J., p. 10, stating: "A jury must determine whether Fidelity had a duty to investigat[e] and request additional information, such as photos to insure the accuracy of the

SFIP rate.").

For the reasons discussed above in reference to Plaintiff's arguments in support of his breach of contract claim, these assertions are unavailing as to Plaintiff's fraud claim. Furthermore, although dissatisfied with the premium charged by Defendant Fidelity, Plaintiff agreed to enter the contract of insurance at the rate determined by Defendant Fidelity (and approved by FEMA), and has continued to renew the policy each year, despite no legal obligation to contract with Defendant Fidelity. In the final analysis, Plaintiff has not presented evidence reasonably establishing the necessary elements of a fraud claim.

Accordingly, the Court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact as to his fraudulent misrepresentation claim and Defendants are entitled to judgment as a matter of law as to this claim.

    C.    Ohio's Valentine Act

Plaintiff brings a state antitrust claim under Ohio's Valentine Act, Ohio Rev. Code § 1331.01 et seq. Ohio Rev. Code § 1331.01(B) makes it unlawful for two or more persons to, *inter alia*, "create or carry out restrictions in trade or commerce," to "increase . . . the price of . . . a commodity," or to fix the price of a commodity. Furthermore, Ohio Rev. Code § 1331.04 prohibits "conspiracy against trade." The Valentine Act was "patterned after the Sherman Antitrust Act, and as a consequence [the Supreme Court of Ohio] has interpreted the statutory language in light of federal judicial construction of the Sherman Act." *C.K. & J.K., Inc. v. Fairview Shopping Ctr. Corp.*, 407 N.E.2d 507, 509 (1980). Thus, a restraint of trade claim under Ohio's Valentine Act is subject to the same analysis as a restraint of trade claim under the Sherman Act. *See Richter Concrete Corp. v. Hilltop Basic Res.*, 547 F. Supp. 893, 920 (S.D.

14

Ohio 1981); *C.K. & J.K., Inc. v. Fairview Shopping Ctr. Corp.*, 407 N.E.2d 507 (1980).

Plaintiff's complaint alleges that Defendants engaged in a restraint of trade or commence by increasing and/or fixing the price of the flood insurance and preventing competition as it relates to the insurance. Defendant England argues that Plaintiff's Valentine Act claim is barred by the applicable statute of limitations, Ohio Rev. Code § 1331.12(B), which provides that such a claim must be commenced within four years after the cause of action accrued. Defendant England reasons that Plaintiff's Valentine Act claim arose, if at all, in August 2002, and because he waited to file this claim until 2008, he failed to timely bring the claim and it therefore must be dismissed. Plaintiff argues that the claim was not untimely filed because Defendants' violations of the Valentine Act are continuous and ongoing. Plaintiff asserts that "Defendants continue to engage in the price fixing conspiracy that resulted in Freeland being charged extremely high insurance premiums, and Freeland continues to be injured by his payment of the resulting premiums." (Pl's Mem. Contra Def. England's Mot. for Summ. J., p. 10). Defendant Fidelity argues that there is no evidence supporting Plaintiff's assertion that it set the premium rate. Additionally, citing *Gibson*, *supra*, and *Wright v. Allstate, Ins. Co.*, 415 F.3d 384 (5th Cir. 2005), Defendant Fidelity argues that the Valentine Act claim is barred and preempted by federal law.

It is unnecessary to analyze the applicability of the statute of limitations and the contours of federal preemption in this context[1] because, even if Plaintiff's Valentine Act claim is not barred by the applicable statute of limitations and is not preempted, it necessarily fails because the

---

[1] The Court notes that while most courts have consistently found that federal law preempts state law claims that are based on the handling and disposition of SFIP claims, some courts have found that claims relating to the procurement of the policy are not preempted by federal law. *See Gibson*, 289 F.3d at 949.

"pricing" of SFIP premiums is controlled by FEMA, not WYO companies.

In support of his Valentine Act claim, Plaintiff makes the conclusory assertion that once the rate was determined by Defendant Fidelity, and approved by FEMA, other insurance carriers were bound by the rate. According to Plaintiff, Defendant Fidelity, and presumably others, prevented competition and restrained trade in this manner. But these assertions are not supported by the record. There is no evidence in the record that Defendants England and Fidelity engaged in price fixing or conspired to raise premium rates.

Moreover, and most importantly, neither Defendant England nor Defendant Fidelity set the rates for standard flood insurance policies, such as the policy issued to Plaintiff. FEMA sets the terms and conditions of all SFIPs, including the rate structures and premium costs. *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998); *Sutor v. FEMA*, No. 06-1371, 2009 WL 4268457, *3 (E.D. Pa. Nov. 23, 2009). While Defendant England facilitated Plaintiff's acquisition of the flood insurance, and Defendant Fidelity, acting as a WYO company, issued the policy, the premium charged was ultimately approved and set by FEMA, which establishes the rating guidelines as part of its administration of the National Flood Insurance Program. Another WYO company would be bound by the rate determined by Defendant Fidelity insofar as FEMA determines the rate structure, which would necessarily apply to all WYO companies.

Therefore, Plaintiff's claim that Defendants violated the Valentine Act fails as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Court concludes that no genuine issue of material fact

exists as to Plaintiff's claims against Defendants, and Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.  Accordingly, the Court **GRANTS** Defendants' Motions for Summary Judgment (Docs. 67 and 69).  Because summary judgment is awarded to Defendants, Defendant Fidelity's motion to quash Plaintiff's jury demand (Doc. 68) is **DENIED** as moot.  Finally, Plaintiff's motion to amend his response to Defendant Fidelity's motion for summary judgment (Doc. 84) is **GRANTED**, and the supplemental information has been considered in the resolution of the pertinent motions.

The Clerk shall remove Documents 67, 68, 69, and 84 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

_s/ George C. Smith_
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**